UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL MANCINA,

    Plaintiff,

v.

ORKIN, LLC,

    Defendant.

Case No.

Hon.

---

| | |
|---|---|
| **WILLIAM R. FRUSH (P87016)** | **DORA A. BRANTLEY (P49088)** |
| **F&S LAW, PLLC** | **JEFFREY G. SCHULTZ (P82931)** |
| Attorney for Plaintiff | **FOSTER, SWIFT, COLLINS & SMITH, PC** |
| 77 Monroe Center St. NW, Suite 600 | Attorneys for Defendant |
| Grand Rapids, MI 49503 | 28411 Northwestern Highway, Suite 500 |
| (248) 675-9192 | Southfield, MI 48034 |
| wfrush@fslawpllc.com | (248) 539-9900; F (248) 200-0252 |
| | dbrantley@fosterswift.com |
| | jschultz@fosterswift.com |

---

## <u>NOTICE OF REMOVAL</u>

Defendant Orkin, LLC ("Orkin") files its Notice of Removal of this action,

Case No. 2026-220199-CZ, from the Circuit Court of Oakland County, Michigan,

in which it is currently pending, to the United States District Court for the Eastern

District of Michigan, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. In support

thereof, and for the purposes of removal only, Orkin states:

## STATEMENT OF THE CASE

1.     On January 15, 2026, Plaintiff Daniel Mancina ("Plaintiff") filed a Complaint in the Circuit Court for the County of Oakland, Michigan, styled *Daniel Mancina v. Orkin, LLC*, Case No. 2026-220199-CZ (the "State Court Action"). The documents attached hereto as **Exhibit A** constitute all of the process, pleadings, and orders that have been served upon Orkin in that action to date. *See* 28 U.S.C. § 1446(a).   Plaintiff served the Summons and Complaint on Orkin on January 23, 2026. *See* **Ex. A, Service of Process Notice**.

2.     The Complaint purports to assert the following causes of action against Orkin: (1) violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1102 *et seq*.; and (2) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Complaint ("Compl.") at ¶¶ 69-105 **(Ex. A at pp. 13-20).**

3.     Pursuant to 28 U.S.C. §§ 102(a)(1) and 1441(a), this District Court is the proper venue because it is the district embracing the place where the State Court Action is pending.

## FEDERAL QUESTION JURISDICTION

4.     Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5.      Plaintiff invokes federal law in Count II of his Complaint, specifically the ADA. Because Plaintiff invokes a federal statute, this case "aris[es] under" the laws of the United States pursuant to 28 U.S.C. § 1331.

6.      To the extent Plaintiff raises a state law claim under the PWDCRA, this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a), which provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, Plaintiff's state law claim rests on the same facts and relies on the same evidence and proofs as his ADA claim. As such, there is no question that the state and federal claims are "so related . . . that they form part of the same case or controversy" between the parties. *See id.*

## PROCEDURAL REQUIREMENTS

7.      This Notice of Removal has been filed within thirty days after Orkin was served with the Summons and Complaint in this case on January 23, 2026. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."). ***See also* Ex. A, Service of Process**

3

**Notice**.

8.     Pursuant to 28 U.S.C. § 1446(d), true and correct copies of this Notice of Removal have been served upon Plaintiff, and Orkin has timely filed a copy of this Notice of Removal with the Clerk of the Circuit Court for the County of Oakland, Michigan.

9.     Orkin is not a citizen of the State of Michigan, the state where this action was brought. *See* 28 U.S.C. § 1441(b)(2).

10.    The undersigned hereby certifies that there are no other defendants who have been properly joined and served.

11.    Orkin preserves all other bases for removal of this action to this Court.

## CONCLUSION

12.    Because the Court has original jurisdiction over this matter, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and because all other prerequisites for removal have been fulfilled, Orkin hereby removes this case from the Circuit Court for the County of Oakland, Michigan to the United States District Court for the Eastern District of Michigan.

4

Respectfully submitted,

**FOSTER, SWIFT, COLLINS & SMITH, PC**

By: /s/ Dora A. Brantley_____
**DORA A. BRANTLEY (P49088)**
Attorneys for Defendant
28411 Northwestern Highway, Suite 500
Southfield, MI  48034
(248) 539-9900
dbrantley@fosterswift.com

Dated: February 20, 2026

## CERTIFICATE OF SERVICE

In accordance with 28 USC § 1446, the undersigned will give written notice to all parties and shall file a copy of the Notice of Removal with the clerk of the Oakland County Circuit Court.

Respectfully submitted,

**FOSTER, SWIFT, COLLINS & SMITH, PC**

By: /s/ Dora A. Brantley_____
**DORA A. BRANTLEY (P49088)**
Attorneys for Defendant
28411 Northwestern Highway, Suite 500
Southfield, MI  48034
(248) 539-9900
dbrantley@fosterswift.com

Dated: February 20, 2026

58124:00001:202430565-1

**EXHIBIT A**

 **Computershare**

**Computershare Entity Solutions, Inc.**
100 Beard Sawmill Road, Shelton, CT 06484

January 26, 2026

Orkin, LLC
SOPs
Rollins, Inc.
2170 Piedmont Rd. NE
Atlanta GA 30324

# SERVICE OF PROCESS NOTICE

Item: 2026-70

The following is a courtesy summary of the enclosed document(s).   **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or how to respond, should be directed to the contact set forth in line 12 below or to the court or government agency where the matter is being heard.

| | | |
|---|---|---|
| 1. | **Entity Served:** | Orkin, LLC |
| 2. | **Title of Action:** | Daniel Mancina vs. Orkin, LLC |
| 3. | **Document(s) Served:** | Summons<br>Complaint |
| 4. | **Court/Agency:** | Oakland County 6th Judicial Circuit Court |
| 5. | **State Served:** | Michigan |
| 6. | **Case Number:** | 2026-220199-CZ |
| 7. | **Case Type:** | Violation |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Friday 01/23/2026 |
| 10. | **Date to Client:** | Monday 01/26/2026 |
| 11. | **# Days When Answer Due:**<br>**Answer Due Date:** | 84<br>Friday 04/17/2026 — CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **Sop Sender:**<br>(Name, City, State, and Phone Number) | William Frush<br>Grand Rapids, MI<br>248-675-9192 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 231 |
| 16. | **Notes:** | None. |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At ComputerShare, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process.  To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by United Agent Group Inc.

Phone: 866 820 7754, Option 2 | www.cgsregisteredagent.com

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

Approved, SCAO

Original - Court
1st copy - Defendant
2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN | | CASE NUMBER |
|---|---|---|
| **JUDICIAL DISTRICT** | **SUMMONS** | 2026-220199-CZ - CZ |
| 6th **JUDICIAL CIRCUIT** | | JUDGE JACOB J. |
| Oakland **COUNTY** | | CUNNINGHAM |

**Court address**
1200 N Telegraph, Pontiac, MI 48341

**Court telephone number**
(248) 858-0344

| Plaintiff's name, address, and telephone number | | Defendant's name, address, and telephone number |
|---|---|---|
| Daniel Mancina, 77 Monroe Center St NW, Ste 600 - #1028, Grand Rapids, MI 49503, (248) 675-9192 | v | ORKIN, LLC, 28175 Haggerty Rd, Novi, MI 48337 |

Plaintiff's attorney bar number, address, and telephone number

William Frush (P87016), 77 Monroe Center St NW, Ste 600 - #1028, Grand Rapids, MI 49503, (248) 675-9192

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.            **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| 1/16/2026 | 04/17/2026 | Lisa Brown |

FILED   Received for Filing   Oakland County Clerk   1/15/2026 3:06 PM

**Summons**   (3/23)

**Case Number** 26- _____ - CZ

### PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served      ☐ personally      ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)      a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| | |
| Place or address of service | |
| | |
| Attachments (if any) | |
| | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____ .
Attachments (if any)                                                          Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN

OAKLAND COUNTY CIRCUIT COURT

DANIEL MANCINA

                                          CASE NO.: 26 -     - CZ

        Plaintiff,

v.

ORKIN, LLC

        Defendant.

---

William R. Frush (P87016)
F&S Law, PLLC
Attorney for Plaintiff
77 Monroe Center St. NW Suite 600
Grand Rapids, MI 49503
wfrush@fslawpllc.com
(248) 675-9192

---

## **COMPLAINT**

NOW COMES Plaintiff DANIEL MANCINA ("Plaintiff"), by and through his attorney F&S Law, PLLC, and hereby states for his Complaint against Defendant ORKIN, LLC (hereinafter "Defendant") as follows:

This is an action for unlawful disability discrimination in violation of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12181-12189, and 28 C.F.R. Part 36. Plaintiff is seeking injunctive relief, monetary damages, costs, and litigation expenses (including attorney's fees), as well as any other relief this Court deems fair and just.

## **PARTIES**

1.    Plaintiff DANIEL MANCINA ("Plaintiff") is a natural person and resident of Livingston County in the State of Michigan.

F&S Law

2.      Plaintiff has a determinable physical impairment that substantially limits one or more major life activities, i.e., the major life activity of seeing, due to Plaintiff's blindness. Plaintiff thus qualifies as a member of a protected class of individuals under the PWDCRA, MCL 37.1103(d).

3.      Plaintiff is also a member of a protected class of individuals under the ADA pursuant to 42 U.S.C. § 12102(1)-(2), and 28 C.F.R. §§ 36.101 et seq.

4.      As a result of his disability, Plaintiff relies on screen-reading software and other assistive technologies/software to access digital content, including websites and mobile applications, and obtain goods and services on equal terms with the non-disabled public.

5.      Plaintiff uses a computer program called VoiceOver to utilize the internet. VoiceOver is a built-in screen reader on macOS that provides auditory descriptions of on-screen elements, permitting Plaintiff to navigate and interact with his computer (and the internet) using keyboard commands and spoken feedback.

6.      Defendant is a foreign limited liability company registered with the Department of Licensing and Regulatory Affairs and authorized to conduct business in the State of Michigan.

7.      Defendant's registered agent is United Agent Group, Inc., located at 28175 Haggerty Road, Novi, MI 48337.

8.      Defendant is a globally recognized pest control company that provides both residential and commercial pest control services, including inspections, treatments, and long-term prevention plans.

9.      At all relevant times, Defendant owned and operated over a dozen separate locations within the State of Michigan, including a location at 55800 Grand River Ave Ste 125, New Hudson, MI 48165, which services Livingston County and surrounding areas.

F&S Law

2

10.     At all relevant times, Defendant also owned, maintained, operated and/or controlled the following website: https://www.orkin.com (hereinafter "Website" or "the Website"). On the Website, Defendant advertises and offers their goods, products, and/or services to members of the public, including Plaintiff. The Website serves as the primary channel through which Defendant advertises, markets, and facilitates the purchase or use of its goods and/or services.

11.     Defendant's physical places of business are places of public accommodation under the PWDCRA because they are businesses whose goods, services, facilities, privileges, advantages, and/or accommodations are extended, offered, sold, or otherwise made available to the general public. MCL 37.1301a.

12.     Defendant's Website serves as the primary gateway for consumers to access Defendant's pest control services at its physical locations throughout Michigan, including its New Hudson location.

13.     Through the Website, consumers can: (1) locate Defendant's service locations and verify whether their residence or business falls within a particular location's service area; (2) research and compare Defendant's various pest control treatment options, pricing structures, seasonal promotions, and service guarantees; (3) view detailed information about specific pest problems (e.g., termites, rodents, bed bugs) and the corresponding treatments available at Defendant's locations; (4) request service callbacks from Defendant's local technicians; (5) obtain free inspection quotes that are prerequisite to scheduling in-person services; and (6) schedule appointments for on-site pest control services to be performed by Defendant's technicians dispatched from its physical locations.

14.     The Website is inextricably intertwined with access to Defendant's physical places of public accommodation, as it is the primary, and for many consumers, the only practical means

F&S Law

3

of initiating service from Defendant's locations. The access barriers encountered by Plaintiff on Defendant's Website have deterred Plaintiff from visiting Defendant's brick and mortar locations because Plaintiff was unable to meaningfully comprehend and/or navigate Defendant's website.

15.     Defendant itself has recognized this connection by creating a digital website that specifically serves as the principal gateway to all its physical locations nationwide, including in Michigan. Defendant controls, operates, and maintains this unified system that connects online consumers to its physical places of business.

16.     Because Plaintiff was unable to use Defendant's Website to browse for bee removal services, compare treatment options, or request a free inspection/quote, he was effectively denied access to Defendant's Michigan places of public accommodation. The Website's inaccessibility operated as an unlawful barrier that prevents Plaintiff from accessing services that would be fulfilled at Michigan locations, thereby violating both the PWDCRA and the ADA's prohibitions on disability discrimination.

17.     Defendant's Website is thus also a place of public accommodation under the PWDCRA, MCL 37.1301(a).

18.     Defendant's places of business are places of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(F).

19.     Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(F).

### JURISDICTION AND VENUE

20.     Plaintiff incorporates by reference paragraphs 1 through 19 as if fully stated herein.

F&S Law

4

21.     This Court has subject-matter jurisdiction over Plaintiff's claim under the Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 et seq., because the amount in controversy exceeds $25,000.00, exclusive of costs, interest, and attorney fees.

22.     This Court also has subject-matter jurisdiction over Plaintiff's federal claim arising under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., because ADA claims are not subject to the exclusive jurisdiction of the federal courts and this Court has concurrent authority to hear such claims. MICH. CONST. art 6, § 13; MCL 600.605.

23.     Defendant is subject to personal jurisdiction in Michigan and Oakland County because Defendant is registered as a foreign limited liability company with the Department of Licensing and Regulatory Affairs and because Defendant is conducting a continuous and systematic part of its general business within the State of Michigan and Oakland County though its New Hudson location.

24.     Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the PWDCRA.

25.     Defendant has been and continues to commit the acts or omissions alleged herein, causing injury and violating the rights prescribed to Plaintiff by the ADA.

26.     Venue is proper in this jurisdiction because Defendant conducts business in Oakland County and because a substantial part of the acts, omissions, injuries, and damages occurred in Oakland County.

## FACTUAL BACKGROUND

27.     Plaintiff incorporates by reference paragraphs 1 through 26 as if fully stated herein.

28.     On or about August 26, 2025, Plaintiff attempted to use Defendant's Website at www.orkin.com to research bee removal services and request services from Defendant.

F&S Law

5

29.     Plaintiff encountered multiple critical accessibility barriers that prevented him from independently navigating Defendant's Website and completing a service request. Specifically, Plaintiff's screen reader could not identify important visual content that conveyed essential information about Defendant's services.

30.     Throughout Defendant's Website, Plaintiff encountered images that his screen reader could not identify because they lacked alternative text descriptions. When Plaintiff navigated through image carousels on the homepage—which displayed information about pest control services and seasonal promotions—his screen reader provided no information about what these images depicted or what services they advertised.

31.     These images violated Web Content Accessibility Guidelines ("WCAG") 2.1 Success Criterion 1.1.1 (Non-text Content) at Level A. The images failed to include any alt attribute, aria-label, aria-labelledby, or title attribute that would convey their content to screen reader users. This represents a complete failure to provide text alternatives for non-text content, rendering the promotional and informational images effectively invisible to blind users.

32.     Images without alternative text are among the most fundamental accessibility failures. Where these images convey important information about available services or serve as navigational elements, blind users cannot access equivalent information. Plaintiff was denied the ability to understand what pest control services Defendant offered through these visual elements, forcing him to search elsewhere on the page for information that sighted users received immediately.

33.     When attempting to navigate service request buttons and interactive elements, Plaintiff's screen reader also encountered confusing and inaccessible nested interactive controls.

Multiple buttons throughout the Website contained focusable elements nested within them, violating proper semantic HTML structure.

34.     These nested interactive controls violated WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value) at Level A. Specifically, button elements with IDs such as "popover-trigger-176," "popover-trigger-178," and similar elements throughout the site contained focusable descendant elements, creating ambiguous focus management and unpredictable behavior for screen reader users.

35.     When Plaintiff attempted to activate these buttons to request service quotes or callbacks, his screen reader's focus became trapped or jumped unexpectedly between nested controls. This created significant confusion about which element he was actually activating and what action would result. These keyboard focus problems are not merely inconvenient: they create complete barriers to completing essential tasks like requesting service.

36.     On the location-specific page for pest control services near Plaintiff's area, Plaintiff encountered links that had no discernible text whatsoever. When his screen reader landed on these links, it announced only "link" with no indication of where the link led or what function it served.

37.     These empty links violated multiple WCAG 2.1 criteria at Level A, including Success Criterion 2.4.4 (Link Purpose) and Success Criterion 4.1.2 (Name, Role, Value). The links lacked any accessible text. There was no visible text content, no aria-label, no aria-labelledby, and no title attribute. In other words: these links were completely unusable because Plaintiff had no way to determine their purpose or destination.

38.     These violations prevented Plaintiff from navigating to Defendant's New Hudson location page and from accessing information about specific bee removal services offered by that

location. Links that provide no indication of their purpose or destination are fundamentally inaccessible and violate the most basic requirements of web accessibility.

39.     On September 9, 2025, Plaintiff revisited the Website. Plaintiff experienced the same accessibility barriers as experienced on August 26, 2025.

40.     In addition to Plaintiff's manual audit, a comprehensive automated accessibility scan of Defendant's Website was completed September 15, 2025.

41.     The automated accessibility scan scanned a total of 528 URLs associated with Defendant's domain. The automated accessibility scan indicated that ~80% of the URLs (422 different pages) presented with WCAG 2.1 Level AA or Level A errors.

42.     WCAG guidelines are divided into levels of compliance: Level A (pages with level A issues are unusable for some people); Level AA (pages with level AA issues are very difficult to use); and Level AAA (pages with level AAA issues can be difficult to use).

43.     Websites are generally expected to maintain compliance with WCAG 2.1 Level AA or higher to be considered accessible. Level A issues—issues that are unusable for some people— are unacceptable as they prevent proper use of a website.

44.     On or about January 9, 2026, Plaintiff's counsel conducted comprehensive accessibility testing of Defendant's Website using industry-standard automated evaluation tools to conduct a page-by-page scan. The testing confirmed the same critical accessibility barriers Plaintiff encountered remained present throughout the Website.

45.     Testing was conducted on three representative pages: the homepage, a location-specific page, and a service-specific page about stinging pests. Each page presented the same categories of critical accessibility violations, demonstrating that the accessibility barriers are not just isolated incidents but systemic failures in Defendant's Website design and development.

8

46.     The identified accessibility violations are not theoretical irregularities or subjectively open to interpretation. Defendant's Website presented objectively verifiable and determinable errors that violate WCAG 2.1 Level A and Level AA guidelines. Level A violations represent barriers that make websites completely unusable for some people with disabilities.

47.     The identified accessibility errors are not theoretical or technical irregularities. They are not subjectively open to interpretation. Defendant's Website presented objectively verifiable and determinable errors that violate WCAG 2.1 Level A guidelines and represent the most severe type of accessibility errors. WCAG 2.1 Level A compliance represents the minimum threshold for accessibility. Websites with Level A violations are considered unusable for some people with disabilities. Websites are generally required to maintain compliance with WCAG 2.1 Level AA to be considered accessible. Here, 80% of Defendant's Website presents with WCAG 2.1 Level AA violations or worse.

48.     The identified WCAG 2.1 violations directly interfered with Plaintiff's ability to research bee removal services, locate Defendant's New Hudson location, understand what services Defendant offers, or request a service callback or quote. These barriers denied Plaintiff full and equal access to Defendant's pest control services in violation of the PWDCRA and Title III of the ADA.

49.     Plaintiff's description of the accessibility barriers herein is based on his experiences during the visits described and confirmed through subsequent automated and manual technical testing. Additional details regarding specific navigation paths, error messages, and technical violations will be provided during discovery as appropriate.

50.     Defendant's Website functions as the principal gateway to its physical places of public accommodation. The Website does not exist as a standalone platform; rather, it is

inextricably linked to Defendant's physical locations by allowing consumers to browse Defendant's goods and services and ultimately connect consumers with Defendant's physical places of business.

51.    Because the Website offers goods, services, accommodations, features, and/or amenities to the general public, the Website forms a nexus between the online services offered by Defendant and Defendant's brick-and-mortar places of business.

52.    The Website is not merely informational but is a primary and integral extension of Defendant's physical places of public accommodation. By operating and offering the Website to the public, Defendant has subjected itself to the PWDCRA and ADA, which prohibit discrimination against individuals with disabilities and require Defendant to offer equal access to the goods and services offered by Defendant's places of public accommodation.

53.    Defendant's failure to operate and/or maintain its Website in a way that is accessible to blind users constitutes a denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations otherwise offered by Defendant's physical places of public accommodation in violation of the PWDCRA and Title III of the ADA.

54.    If Defendant addresses (i.e., fixes and/or repairs) the accessibility errors on their Website, Plaintiff intends to return to Defendant's Website. Because Plaintiff was unable to navigate or use Defendant's Website without the assistance of a sighted individual, Defendant has denied Plaintiff full and equal access to Defendant's goods and services on account of Plaintiff's disability.

55.    Defendant's Website contains a 'Web Accessibility' statement, demonstrating that Defendant is aware of its legal obligations to provide accessible digital content. Despite this

awareness, Defendant has failed to implement even basic accessibility features required by WCAG 2.1 Level A—the most fundamental tier of accessibility compliance.

56.     The accessibility violations identified by Plaintiff and confirmed through technical testing are not difficult or expensive to remediate. Missing alternative text for images, improper ARIA attributes, and inaccessible form controls are elementary accessibility failures that competent web developers know how to prevent. These violations demonstrate that Defendant has either: (1) failed to implement any accessibility testing or quality assurance for its Website, or (2) knowingly published a Website with known accessibility barriers.

57.     Defendant's conduct demonstrates a pattern of deliberate indifference to the rights of individuals with disabilities. Despite having actual knowledge of accessibility requirements (as evidenced by its accessibility statement) and despite the ready availability of technical solutions to the identified barriers, Defendant has chosen to maintain an inaccessible Website that excludes blind and visually impaired customers from full participation in its services.

58.     Requiring Plaintiff to make contact with Defendant by telephone rather than through the Website, the method readily available to non-disabled customers, does not satisfy Defendant's obligations under the PWDCRA or ADA. The law requires equal access, not separate and inferior alternatives. Plaintiff is entitled to the same privacy, independence, convenience, and ability to comparison shop that the Website provides to sighted users. Forcing disabled customers to use alternative channels is precisely the type of 'separate but equal' segregation that the ADA and PWDCRA prohibit.

59.     Defendant has not provided full and equal access to enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and Defendant's physical locations in contravention of the PWDCRA and ADA.

F&S Law

11

60.     Places of public accommodation under the PWDCRA and ADA must ensure that their goods or services are fully and equally provided to individuals with disabilities, who shall not be discriminated against solely on the basis of disability.

61.     The purpose of the PWDCRA and ADA are to provide an equal opportunity for individuals with disabilities to participate in all aspects of American civic and economic life. That mandate extends to internet e-commerce websites including Defendant's Website.

62.     Plaintiff is a disabled individual who is interested in patronizing and intends to access the Website once the Website's access barriers are removed or remedied.

63.     Plaintiff, like millions of other visually impaired and blind individuals, finds traveling outside of his home can be a difficult, hazardous, frightening, frustrating, and/or a confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

64.     Defendant's denial of equal access to Plaintiff caused him significant emotional distress and dignitary harm. Specifically:

a.  Plaintiff felt humiliated when forced to ask a sighted family member or friend for assistance; this dependence on others for tasks that sighted individuals complete with ease reinforces Plaintiff's sense that he is treated as a second-class citizen.

b.  Plaintiff experienced anger and frustration when, after spending significant time attempting to navigate image carousels, understand unlabeled service information, and activate inaccessible buttons on Defendant's Website, he was unable to accomplish what sighted users can do in minutes.

c.  Plaintiff felt excluded and marginalized because Defendant's Website effectively told him that his business was not wanted and that Defendant did not value him as a customer. This reinforced the message that Plaintiff receives from businesses with inaccessible websites: accommodating people with disabilities is optional rather than mandatory.

d.  Plaintiff's disability already requires him to navigate a world not designed for his needs. Defendant's failure to provide a basic accessible website, for which the

technology has existed for years and is required by law, compounded Plaintiff's sense of isolation and demonstrated Defendant's indifference to his civil rights.

65.     The barriers on Defendant's Website also created practical harm. Because Plaintiff could not independently research bee removal services, locate Defendant's New Hudson location, understand service options, or request a service callback from Defendant's Website, he either had to impose on family members to assist him (creating dependency and loss of privacy regarding his pest control needs) or seek alternative pest control providers with accessible websites.

66.     Plaintiff has been denied the full enjoyment of the facilities, goods, and services of www.orkin.com, and deprived of the opportunity to participate and enjoy the facilities, goods, and services offered by Defendant's brick and mortar locations as a result of accessibility errors encountered on the Website.

67.     The barriers that exist on the Website resulted in discriminatory and unequal treatment to individuals with visual disabilities, including Plaintiff.

68.     These injuries are ongoing. Plaintiff will continue to encounter these same barriers each time he attempts to use Defendant's Website. Defendant's ongoing violations constitute continuing and recurring injuries that will persist absent remediation of Defendant's Website.

## COUNT I – VIOLATION OF THE PWDCRA

69.     Plaintiff incorporates by reference paragraphs 1 through 68 as if fully stated herein.

70.     Plaintiff is an individual with a visual impairment that substantially limits a major life activity and qualifies as a disability within the meaning of the PWDCRA.

71.     The PWDCRA guarantees the opportunity to obtain the "full and equal utilization of public accommodations" without discrimination as a civil right. MCL 37.1102(1).

72.     A place of public accommodation means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether

F&S Law

13

licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

73. Defendant's place of business is a place of public accommodation under the PWDCRA because it is a business whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL 37.1301(a).

74. Defendant's Website is also a place of public accommodation under the PWDCRA because it provides the general public with the ability to locate and learn about Defendant's physical locations and/or services available at Defendant's physical locations. The Website is thus an extension of, gateway to, and an intangible "service, privilege, and advantage" of Defendant's physical places of public accommodation within the meaning of MCL 37.1302(a).

75. The PWDCRA expressly states:

> except where permitted by law, a person shall not...deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodation of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids (e.g., screen-reading software). MCL 37.1302(a).

76. Defendant's Website functions as an essential gateway to Defendant's places of public accommodation because it is the primary means by which prospective customers, including Plaintiff, can access information regarding Defendant's goods, services, facilities, privileges, and accommodations.

77. Because Defendant's Website provides information about Defendant's goods and services and functions as the essential digital gateway to Defendant's physical places of business, there is a nexus between the Website and Defendant's physical places of business.

14

78.     The PWDCRA applies to all aspects of the provision of goods and services by a place of public accommodation, including the use of digital platforms when those digital platforms are directly connected to the corresponding physical facilities and are essential to accessing and utilizing the facilities' services.

79.     Defendant's Website is designed, constructed, managed, operated, and/or maintained in a manner that is inaccessible to Plaintiff and other similarly situated individuals because it is not compatible with commonly used screen-reader software. The accessibility errors on Defendant's Website make the goods and services offered therein unavailable to Plaintiff and have deterred Plaintiff from visiting Defendant's physical locations.

80.     Defendant's Website contains specific, remediable barriers that contravene widely recognized accessibility standards as identified in detail above. The accessibility barriers directly denied Plaintiff the full and equal enjoyment of Defendant's goods and services by materially burdening tasks that sighted users can perform routinely.

81.     Plaintiff attempted to use Defendant's Website on August 26, 2025, and on September 9, 2025. Because of the accessibility errors described in detail above, Plaintiff was prevented from understanding service options, locating a service or location, or requesting a service callback or free quote on account of his disability. This constituted an unlawful denial of equal access to Defendant's goods, services, and accommodations.

82.     As a direct and proximate result of Defendant's unlawful denial of equal access, Plaintiff has been denied the full and equal enjoyment of Defendant's goods, services, and accommodations. Plaintiff has suffered and continues to suffer both economic and dignitary harms, including:

    a. Loss of independence and autonomy when forced to rely on sighted assistance to browse or obtain the full benefit of Defendant's Website;

    b. Humiliation, embarrassment, and emotional distress from being excluded from services readily available to non-disabled customers;

    c. Frustration and wasted time attempting to navigate an inaccessible website;

    d. Exacerbation of his sense of social exclusion and marginalization as a person with disabilities;

    e. Denial of the dignity and the right to make independent consumer decisions.

83. These harms are ongoing and will persist until Defendant remediates its website.

84. Plaintiff is entitled to monetary relief for emotional injuries and reasonable attorney's fees under MCL 37.1606 as a result of Defendant's denial of equal access.

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

    a. Damages for the dignitary harms, emotional distress, frustration, humiliation, embarrassment, loss of independence, and exacerbated feelings of segregation and exclusion Plaintiff has suffered and continues to suffer as a direct result of Defendant's unlawful denial of equal access;

    b. An award of reasonable attorney fees, costs, and litigation expenses;

    c. Pre- and post-judgment interest;

    d. Any other relief as the Court deems fair and just.

## COUNT II – VIOLATION OF THE ADA

85. Plaintiff incorporates by reference paragraphs 1 through 84 as if fully stated herein.

86. Defendant operates a place of public accommodation within the meaning of 42 U.S.C. §12181(7)(F), because Defendant's physical locations qualify as some "other service establishment" and are therefore subject to Title III of the ADA.

F&S Law

16

87.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

88.     Defendant's Website is covered under Title III of the ADA because it provides the general public with the ability to locate and learn about Defendant's physical places of business and to connect consumers to Defendant's physical places of business. The Website is an extension of, gateway to, and intangible "service, privilege, and advantage" of Defendant's physical locations, and is therefore a covered service of a place of public accommodation under 42 U.S.C. § 12182(a).

89.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are equal to the opportunities afforded to other non-disabled individuals.

90.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

91.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

F&S Law

17

treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden."

92.     Defendant's non-compliant Website denies blind and visually impaired individuals full and equal access to, and enjoyment of, the goods, information, and services that Defendant has made available to the public on the Website and in its physical locations in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

93.     Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.

94.     Violations may be present and on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

95.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other business entities in making their websites accessible. Incorporating basic accessibility improvements as described in WCAG 2.1 AA would neither fundamentally alter the nature of Defendant's business nor would they result in an undue burden on Defendant.

96.     Upon information and belief, Defendant's Website is substantially noncompliant with the current WCAG 2.1 AA guidelines and fails to be perceivable, operable, robust, understandable, or accessible by blind and/or visually disabled individuals such as Plaintiff.

97.     Defendant has and continues to violate the ADA by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of screen reader

F&S Law

software to comprehend and access internet websites. The violations within the Website are ongoing.

98.     Part 36 of Title 28 of the C.F.R. was designed and implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

99.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

100.    Regulatory guidance confirms that Title III specifically requires that places of public accommodation provide effective communication via auxiliary aids and services to individuals with disabilities. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems."

101.    28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

102.    Public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

103.    As a direct and proximate result of Defendant's failure to provide an ADA-compliant Website with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury-

F&S Law

in-fact by being denied full and equal access to, and enjoyment of, Defendant's Website and the corresponding physical facilities. Plaintiff has experienced dignitary and emotional harms, including frustration, humiliation, and loss of independence. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the ongoing disability discrimination.

104.    This Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief.

105.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.  A permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b.  A permanent injunction requiring Defendant to take the steps necessary to make its Website fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

d.  Such other and further relief as this Court deems fair and just.

January 15, 2026

William R. Frush (P87016)
F&S Law, PLLC
Attorney for Plaintiff
77 Monroe Center St. NW Suite 600
Grand Rapids, MI 49503
wfrush@fslawpllc.com
(248) 675-9192

F&S Law

20